UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

JANELLE ATKINSON-WIGNALL,

                      *Plaintiff,*

       -against-

STATE UNIVERSITY OF NEW YORK,

                   *Defendant.*

2:19-cv-06527

(GRB/SIL)

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS THE THIRD AMENDED COMPLAINT**

LETITIA JAMES
Attorney General
State of New York
*Attorney for Defendant*
200 Old Country Road, Suite 240
Mineola, New York 11501

HELENA LYNCH
Assistant Attorney General
  *of Counsel*
(516) 248-3312
Helena.Lynch@ag.ny.gov

# TABLE OF CONTENTS

PRELIMINARY STATEMENT...........................................................................................1

ALLEGATIONS IN THIRD AMENDED COMPLAINT ............................................2

STANDARD ON MOTION TO DISMISS AND ELEMENTS OF CLAIM OF
EMPLOYMENT DISCRIMINATION UNDER TITLE VII (AND TITLE IX, WERE
SUCH A CLAIM COGNIZABLE) ................................................................................8

ARGUMENT................................................................................................................10

POINT I:
PLAINTIFF'S TITLE IX CLAIM SHOULD BE DISMISSED BECAUSE A CAUSE
OF ACTION FOR EMPLOYMENT DISCRIMINATION IS NOT COGNIZABLE
UNDER TITLE IX......................................................................................................10

POINT II
PLAINTIFF FAILS TO ASSERT FACTS SUFFICIENT TO RAISE A PLAUSIBLE
INFERENCE THAT CONSIDERATIONS OF HER RACE OR GENDER PLAYED
ANY ROLE IN THE NON-RENEWAL OF HER COACHING CONTRACT........11

    A. Plaintiff Fails to Plausibly Allege that She was Treated More Harshly Than
       Any Similarly Situated White or Male Coach.................................................12

    B. Plaintiff Fails to Plausibly Allege that Gender Stereotypes Played Any
       Role in the Non-Renewal of Her Coaching Contract.....................................14

    C. Plaintiff Fails to Raise an Inference of Race or Gender Discrimination
       Based on Her Allegation that The New Swim Coach is a White Female ...17

CONCLUSION ............................................................................................................20

# TABLE OF AUTHORITIES

**Case**                                                                                      **Page**

*AB ex rel. CD v. Rhinebeck Cent. Sch. Dist.,*
    224 F.R.D. 144 (S.D.N.Y. 2004)...........................................................................9

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009).............................................................................................8

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)..........................................................................8, 12, 18, 19

*Blige v. City Univ. of New York,*
    No. 1:15-cv-08873, No. 2017 WL 498580 (S.D.N.Y. Jan. 19, 2017)................13

*Brodt v. City of N.Y.,*
    4 F. Supp. 3d 562, 570 (S.D.N.Y. 2014)..............................................................13

*DePrima v. City of New York Dep't of Educ.,*
    No. 12-cv-3626, 2014 WL 1155282 (E.D.N.Y. Mar. 20, 2014) ........................14

*Doron Precision Sys., Inc. v. FAAC, Inc.,*
    423 F. Supp. 2d 173 (S.D.N.Y. 2006)................................................................19

*E.E.O.C. v. Port Auth. of New York & New Jersey,*
    768 F.3d 247 (2d Cir. 2014) ..........................................................................8, 18

*Faber v. Metro. Life Ins. Co.,*
    648 F.3d 98 (2d Cir. 2011) ................................................................................19

*Gayle v. Children's Aid Coll. Prep Charter Sch.,*
    No. 18 Civ. 9874, 2019 WL 3759097 (S.D.N.Y. July 29, 2019) ......................10

*Hauff v. State Univ. of New York,*
    425 F. Supp. 3d 116 (E.D.N.Y. 2019). ..............................................................10

*Jaeger v. N. Babylon Union Free Sch. Dist.,*
    191 F. Supp. 3d 215 (E.D.N.Y. 2016). ..............................................................12

*Littlejohn v. City of New York,*
    795 F.3d 297 (2d Cir. 2015) ....................................................9, 18, 19

*Long Miao v. Fanhua, Inc.,*
    No. 18 Civ. 8183, 2020 WL 996602 (S.D.N.Y. Mar. 2, 2020). .........................19

*Maggio v. City Univ. of New York,*
    No. cv-054211, 2006 WL 8439324 (E.D.N.Y. Nov. 14, 2006) .........................10

*Martin v. MTA Bridges & Tunnels,*
    610 F. Supp. 2d 238 (S.D.N.Y. 2009) ...................................................9

*Naumovski v. Norris,*
    934 F.3d 200 (2d Cir. 2019) ...........................................................15

*Pejovic v. State Univ. of New York at Albany,*
    No. 17-cv-1092, 2018 WL 3614169 (N.D.N.Y. July 26, 2018)...........................9

*Price Waterhouse v. Hopkins,*
    490 U.S. 228 (1989)....................................................................15

*Ramirez v. Hempstead Union Free Sch. Dist. Bd. of Educ.,*
    33 F. Supp. 3d 158 (E.D.N.Y. 2014) .............................................12, 15

*Towers v. State Univ. of New York at Stony Brook,*
    No. cv-04-5243, 2007 WL 1470152 (E.D.N.Y. May 21, 2007).........................10

**Federal Statutes**                             **Page**

42 U.S.C. § 2000e–2(a)(1) (Title VII of the Civil Rights Act of 1964) ............... *passim*

20 U.S.C. § 1681(a) (Title IX of the Education Amendments of 1972) ............. *passim*

**Federal Rules of Civil Procedure**                      **Page**

Rule 12(b)(6).......................................................................................1

# PRELIMINARY STATEMENT

Defendant, State University of New York, by its attorney, LETITIA JAMES, Attorney General of the State of New York, respectfully submits this memorandum of law in support of its motion, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss all claims and requests for relief asserted in the Third Amended Complaint and Jury Demand dated June 26, 2020 (the "Complaint" or "Compl.," Dkt. No. 36).

Plaintiff, who was formerly employed by Defendant as the coach of Stony Brook University's ("Stony Brook") swim team, alleges in a conclusory and speculative manner that she was terminated from her coaching position based on her gender, as well as her race, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a)(1) ("Title VII") and Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a) ("Title IX").

Plaintiff fails to state a plausible Title VII claim that her coaching contract was not renewed based on her gender or race, or a plausible Title IX claim that her contract was not renewed based on her gender. As an initial matter, the majority view of district courts within the Second Circuit is that no private right of action is available under Title IX for claims of employment discrimination. However, if the Court rules that a private right of action is available under Title IX, Plaintiff's

Title IX claim should be dismissed in any event because Plaintiff fails to plead a plausible claim under either Title VII or Title IX.

Plaintiff's claims are premised on general, speculative, and conclusory allegations that, because of gender stereotypes, female coaches are treated differently from male coaches, and that these stereotypes, the nature of which Plaintiff fails to specify, are exacerbated for female coaches of color. However, absent from the Complaint is any factual allegation that any SUNY employee engaged such stereotypes or that Plaintiff's gender or race otherwise factored into the non-renewal of her coaching contract. Plaintiff's allegations of the general existence of stereotypes are, according to settled law, insufficient to state a claim under either Title VII or Title IX.

Accordingly, all claims asserted in the Complaint should be dismissed.

## ALLEGATIONS IN THIRD AMENDED COMPLAINT

As alleged in the Complaint and taken as true solely for purposes of this motion, Plaintiff is a Black woman of Jamaican descent with a background in competitive swimming who was hired as the head coach of Stony Brook's swim team beginning in March 2017. Compl. ¶¶ 38, 66.

Plaintiff alleges generally that female coaches are subject to gender stereotypes causing their coaching behavior to be perceived as either too soft or too harsh, and that these gender stereotypes are exacerbated for female coaches of

color. Compl. ¶¶ 5-9. Plaintiff further alleges generally that female and male athletes are discriminated against: female athletes are allegedly coddled, whereas legitimate complaints by male athletes are ignored. Compl. ¶ 10. Plaintiff alleges that, at Stony Brook, men are hired exclusively as coaches for men's teams, whereas female teams are coached by male and female coaches. Compl. ¶¶ 13-17.

Plaintiff was hired to rebuild Stony Brook's swim program for the 2017-18 season after a five-year hiatus during which the pool underwent renovations. Compl. ¶ 66. The National College Athletic Association ("NCAA") standards call for a minimum of eleven swimmers on a team. Compl. ¶ 70. At the beginning of the 2017-18 academic year the team had thirteen members. Compl. ¶¶ 71-74. However, three swimmers quit the team shortly thereafter, leaving ten team members. Compl. ¶¶ 75-76. Plaintiff considered many of the remaining swimmers not to be of the caliber Plaintiff could have recruited had she been given more time to build the team. Compl. ¶¶ 77, 78. As the season progressed, more swimmers left the team. Compl. ¶ 79.

Plaintiff alleges she was assured by Athletic Director Shawn Heilbron that Defendant knew more time was needed to build the team and that Plaintiff would not be held to high performance standards for three to five years. Compl. ¶ 80. Unnamed "administrators" allegedly did not give Plaintiff the "same degree of respect and control over her team as they did male coaches," who are also

unnamed. Compl. ¶ 81. In November 2017, Plaintiff met with "Student Athlete A," whom Plaintiff was considering cutting from the team for failure to keep up with practices and to perform at a competitive level. Compl. ¶ 88. Student Athlete A stated that she needed to return home for a funeral and told Plaintiff which practices she would miss, but then missed two additional practices. Compl. ¶¶ 89, 90. Plaintiff "pulled Student Athlete A aside," and suggested she might be better suited to a club team rather than the more rigorous Division I program. Compl. ¶ 43. The following day Plaintiff attended a meeting with Student Athlete A and Assistant Athletic Director Stephen Clacherty, where Plaintiff learned that Student Athlete A understood that she was being kicked off the team. Compl. ¶¶ 93, 94. Plaintiff told Student Athlete A that she could remain on the team if she attended practices and "kept in communication." Compl. ¶ 97.

After Student Athlete A then failed to make up for cancelled team practices and failed to show up for a scheduled practice, Plaintiff did not enter Student Athlete A into a meet. Compl. ¶¶ 98-100. Student Athlete A then contacted Clacherty, who yelled at Plaintiff. Compl. ¶¶ 101-103. Clacherty then requested a meeting with Plaintiff, who requested that someone else be present at the meeting due to Clacherty's "aggressive behavior" toward Plaintiff. Compl. ¶¶ 104-107. A meeting was held with Clacherty, Heilbron, and Assistant Coach Jordan Bowen. Compl. ¶ 109. In response to Heilbron's question of what Plaintiff needed to help

improve team morale, Plaintiff stated that she had tried numerous things and asked if the others at the meeting had any suggestions. Compl. ¶¶ 111-112. The others at the meeting stated that Plaintiff just needed to get through the year until she could recruit higher level swimmers. Compl. ¶ 113.

Plaintiff requested that Heilbron meet with the team so that the team members would understand that the administration supported her, but Heilbron declined. Compl. ¶¶ 114-115. Instead, Heilbron had the lacrosse team members meet with the swim team, after which the lacrosse team members told Heilbron that they "felt bad for the swim team coaches" because the team members did not appreciate the rigors of Division I competition. Compl. ¶ 116.

Plaintiff alleges she was "not given the same institutional support as male coaches and coaches of men's teams." Compl. ¶ 117. Plaintiff further alleges that unnamed "male and/or white coaches" were permitted to make their own decisions about team matters and that the administration did not get involved when student athletes made unspecified complaints about such coaches. Compl. ¶¶ 118-120. Plaintiff alleges she was "micromanaged" in ways that unnamed male and white coaches, and coaches of men's teams, were not. Compl. ¶ 121.

Plaintiff provides the names of several male coaches and the length of their employment with SUNY, but does not allege that any one of these coaches received complaints or was otherwise similarly situated to Plaintiff, and makes no

allegations as to whether any one of these coaches was investigated or provided with institutional support, or treated differently from Plaintiff in any manner. Compl. ¶ 117; *see also* Compl. ¶ 84 n.7. Most of these male coaches are alleged to be white, and one is alleged to be a "male of color." *Id*. Plaintiff does not identify where within the SUNY system these coaches are employed. *Id*.

In December 2017, Clacherty agreed with a suggestion made by Plaintiff that athletes be required to be in the top eighty percent in the conference standing in order to be entered into a meet. Compl. ¶¶ 122-123. Student Athlete A was informed of this requirement. Compl. ¶ 124. Student Athlete A quit the team in early 2018 without providing a reason. Compl. ¶¶ 125, 126.

The day after she quit the team, Student Athlete A sent an email to Heilbron, Clacherty, University President Samuel Stanley, and others reporting abusive behavior by Plaintiff, including that Plaintiff ignored or downplayed athletes' mental health concerns and physical injuries. Compl. ¶ 127. Plaintiff was informed that an investigation would take place, and she complied with a request to compile documents. Compl. ¶ 128. On January 20, 2018, Plaintiff learned that the mother of "Student Athlete B" reported abusive behavior by Plaintiff. Compl. ¶ 129.

The team's volunteer coach was interviewed by an investigator and told the investigator the coaching staff were having difficulties with Student Athletes A

and B, and with the latter's mother. Compl. ¶ 131. The volunteer coach informed Plaintiff the investigator "seemed unwilling to listen" and asked the volunteer coach to sign an inaccurate statement. Compl. ¶ 132. An interview with Assistant Coach Bowen scheduled for January 26, 2018 was cancelled, and that day Heilbron terminated Plaintiff's employment. Compl. ¶¶ 133-134. Plaintiff was not interviewed. Compl. ¶ 135.

Plaintiff alleges that the student athletes' allegations against her were known to be false and that the administration failed to conduct a thorough and unbiased investigation. Compl. ¶¶ 137-138. According to Plaintiff, the allegations against her were the result of general stereotypes affecting female coaches of color. Compl. ¶ 139. Plaintiff alleges her behavior was "well within acceptable and standard coaching behavior," but that such behavior, while accepted in male coaches, is "often perceived as unacceptable for female coaches, especially female coaches of color." Compl. ¶¶ 139, 142.

Plaintiff alleges that an unidentified white female coach was investigated for student athlete complaints, but that coach's employment was not terminated. Compl. ¶ 140.

Plaintiff alleges she is aware of "other (male and/or white)" coaches who were supported by the administration after they received complaints from student athletes. Compl. ¶ 144. Plaintiff fails to provide any identifying information

regarding these purported "other (male and/or white)" coaches. Plaintiff alleges that Defendant overreacted to complaints against her and failed to properly investigate them, and that this is evidence that her gender and race were "contributing and/or motivating" factors in the decision not to renew her coaching contract. Compl. ¶¶ 145-146.

### STANDARD ON MOTION TO DISMISS AND ELEMENTS OF CLAIM OF EMPLOYMENT DISCRIMINATION UNDER TITLE VII (AND TITLE IX, WERE SUCH A CLAIM COGNIZABLE)

To survive a motion to dismiss, a complaint must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged— but it has not 'show[n]'—that the pleader is entitled to relief." *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009) (internal quotation marks omitted). A plaintiff alleging discrimination need not establish every element of a *prima facie* claim, but she nevertheless must satisfy the plausibility standard by "at a minimum assert[ing] nonconclusory factual matter sufficient to nudge [her] claims across the line from conceivable to plausible." *E.E.O.C. v. Port Auth. of New York & New Jersey*, 768 F.3d 247, 254 (2d Cir. 2014) (internal citations, alterations, and quotation marks omitted). Where a plaintiff has not "nudged [her] claims across the line from conceivable to plausible," the claim should be dismissed. *Twombly*, 550 U.S. at 570.

To establish a prima facie case for employment discrimination under Title VII, plaintiff must show that (1) she is a member of a protected class, (2) she was qualified for the position, (3) she suffered an adverse employment action, and (4) such adverse employment action occurred under circumstances giving rise to an inference of discrimination. *Littlejohn v. City of New York*, 795 F.3d 297, 306–07 (2d Cir. 2015); *Martin v. MTA Bridges & Tunnels*, 610 F. Supp. 2d 238, 250 (S.D.N.Y. 2009) ("[A] plaintiff must do more than state that she is a member of a protected class who suffered an adverse employment action.").

As set forth below, district courts within the Second Circuit have overwhelmingly held that Title IX does not allow a cause of action for employment discrimination. *See infra*, Point I. However, were such a cause of action to be recognized, the elements would be identical to those under Title VII. *See, e.g., AB ex rel. CD v. Rhinebeck Cent. Sch. Dist.*, 224 F.R.D. 144, 153 (S.D.N.Y. 2004) ("Title IX claims are analyzed under the same framework as claims arising under Title VII of the Civil Rights Act of 1964."); *see also Pejovic v. State Univ. of New York at Albany*, No. 17-cv-1092, 2018 WL 3614169, at *3 (N.D.N.Y. July 26, 2018) ("A party bringing a Title IX sex-discrimination claim must offer the same kind of proof required in a Title VII sex-discrimination claim.").

## ARGUMENT

**POINT I:**  **PLAINTIFF'S TITLE IX CLAIM SHOULD BE DISMISSED BECAUSE A CAUSE OF ACTION FOR EMPLOYMENT DISCRIMINATION IS NOT COGNIZABLE UNDER TITLE IX**

"An overwhelming majority of district courts in [the Second] Circuit have found that an implied private right of action does not exist under Title IX for employees alleging gender discrimination in the terms and conditions of their employment." *Gayle v. Children's Aid Coll. Prep Charter Sch.*, No. 18 Civ. 9874, 2019 WL 3759097, at *5 (S.D.N.Y. July 29, 2019); *see also Maggio v. City Univ. of New York*, No. cv-054211, 2006 WL 8439324, at *3 (E.D.N.Y. Nov. 14, 2006) (agreeing with "those cases that have found no private right of action for educational employees under Title IX"); *Towers v. State Univ. of New York at Stony Brook*, No. cv-04-5243, 2007 WL 1470152, at *4 (E.D.N.Y. May 21, 2007) ("The Court agrees with those courts that have held that Title IX cannot be used to circumvent the remedial scheme of Title VII."). The Second Circuit has not ruled on this question. *See Hauff v. State Univ. of New York*, 425 F. Supp. 3d 116, 129, 133 (E.D.N.Y. 2019).

The Court should agree with the overwhelming majority of district courts within the Second Circuit that no cause of action for employment discrimination is cognizable under Title IX.

However, if the Court rules such a cause of action is cognizable, Plaintiff's Title IX claim should nevertheless be dismissed because, as set forth below, *see infra*, Point II, Plaintiff has not plausibly stated such a claim.[1]

**POINT II: PLAINTIFF FAILS TO ASSERT FACTS SUFFICIENT TO RAISE A PLAUSIBLE INFERENCE THAT CONSIDERATIONS OF HER RACE OR GENDER PLAYED ANY ROLE IN THE NON-RENEWAL OF HER COACHING CONTRACT**

Assuming, solely for purposes of this motion, that Plaintiff can establish the first three elements of a cause of action for employment discrimination—that she is a member of a protected class, was qualified for her position, and suffered an adverse employment action—Plaintiff nevertheless fails to state a claim under Title VII or Title IX because she pleads no facts upon which it could plausibly be inferred that the non-renewal of her contract had anything to do with her gender or race. Plaintiff attempts to plead an inference of discrimination by speculating that (i) Plaintiff was treated more harshly than white male coaches, *see, e.g.*, Compl. ¶¶ 81-87, and (ii) this alleged harsher treatment was due to stereotypes that cause

---

[1] In any event, Plaintiff's claim of race-based discrimination cannot proceed under Title IX, which provides, in relevant part:

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.

20 U.S.C. § 1681(a).

the coaching behavior of female coaches of color to be judged more harshly, *see* Compl. ¶¶ 5-9, 14-20.

"Various circumstances may contribute to a permissible inference of discriminatory intent . . . including . . . 'the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group.'" *Ramirez v. Hempstead Union Free Sch. Dist. Bd. of Educ.*, 33 F. Supp. 3d 158, 167–68 (E.D.N.Y. 2014) (quoting *Abdu–Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456 (2d Cir. 2001)). However, Plaintiff pleads no such circumstances permitting an inference of discriminatory intent. Instead, Plaintiff's allegations combine unsupported conclusions with speculation. After several attempts at pleading a cause of action, Plaintiff has not "nudged [her] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

### A. Plaintiff Fails to Plausibly Allege that She Was Treated More Harshly Than Any Similarly Situated White, Male Coach

A plaintiff may raise an inference of discrimination by "showing that the employer treated plaintiff less favorably than a similarly situated employee outside [her] protected group." *Jaeger v. N. Babylon Union Free Sch. Dist.*, 191 F. Supp. 3d 215, 230 (E.D.N.Y. 2016); *see also Ramirez*, 33 F. Supp. 3d at 167-68. However, Plaintiff fails to identify a single employee of a different race or gender who was similarly situated and received more favorable treatment.

Under settled law within the Second Circuit, the general allegations asserted by Plaintiff are insufficient to state a plausible claim: "Numerous courts within the Second Circuit have granted motions to dismiss disparate treatment claims where the complaint was entirely devoid of any details regarding the purported comparators, *e.g.*, who they are, what their positions or responsibilities were . . . , how their conduct compared to plaintiffs' or how they were treated differently by defendants." *Blige v. City Univ. of New York*, No. 1:15-cv-08873, No. 2017 WL 498580, at *9 (S.D.N.Y. Jan. 19, 2017) (internal quotation marks and alterations omitted), *adopted*, 2017 WL 1064716 (S.D.N.Y. Mar. 21, 2017).

Plaintiff alleges generally that female coaches of color who are the subject of student athlete complaints are treated more harshly than white, male coaches who are the subject of such complaints. Although an inference of discrimination may be raised "when a plaintiff plausibly alleges that similarly situated employees outside of plaintiff's protected class received more favorable treatment," to do so the "complaint 'must compare' the plaintiff to employees who are 'similarly situated in all material respects.'" *Brodt v. City of N.Y.*, 4 F. Supp. 3d 562, 570 (S.D.N.Y. 2014) (quoting *Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 95 (2d Cir. 1999)). Plaintiff fails to satisfy this requirement. Plaintiff provides a list of male, mostly white, coaches who are employed by SUNY, but she does not identify a single white male coach who received a single student athlete complaint. Compl.

¶¶ 84 n.7, 117. Nor does Plaintiff identify a single white male coach who was treated more favorably than Plaintiff. *Id*. In addition, Plaintiff alleges that these coaches were employed by SUNY, but she does not specify the location of their employment within the SUNY system. *Id*. Because of these numerous deficiencies in the pleadings, Plaintiff cannot satisfy the requirement to show that any of the named or unnamed male, mostly white, coaches she lists are similarly situated to Plaintiff. *See DePrima v. City of New York Dep't of Educ.*, No. 12-cv-3626, 2014 WL 1155282, at *6 (E.D.N.Y. Mar. 20, 2014) (dismissing claim where plaintiff "failed to specifically identify any comparators, let alone allege that she is similar to those comparators in all material respects").

Plaintiff fails to state a plausible claim that she was treated differently from any similarly situated white or male coach. Plaintiff's claims, therefore, should be dismissed.

### B. Plaintiff Fails to Plausibly Allege that Gender Stereotypes Played Any Role in the Non-Renewal of Her Coaching Contract

Plaintiff alleges generally that female coaches are subject to gender stereotypes and that these stereotypes are exacerbated for female coaches of color, but she does not make a single factual allegation from which it could be inferred that such stereotypes played any role in the non-renewal of her coaching contract.

A plaintiff may raise an inference of discrimination by alleging "criticism of the plaintiff's performance in ethnically degrading terms" or "invidious

comments about others in the employee's protected group." *Ramirez*, 33 F. Supp. 3d at 167–68 (internal quotation marks omitted). A plaintiff may also raise an inference of discrimination by plausibly alleging that such comments demonstrated race or gender stereotypes. *Naumovski v. Norris*, 934 F.3d 200, 217 (2d Cir. 2019) (agreeing that a plaintiff may establish a claim of disparate treatment based on gender stereotypes where supervisor stated that plaintiff was likely to engage in sexual behavior because she was a female teacher in her 30s); *see also Price Waterhouse v. Hopkins*, 490 U.S. 228, 235 (1989) (plaintiff established Title VII discrimination claim based on stereotyping where she provided evidence of comments that the plaintiff's appearance and demeanor were insufficiently feminine).

However, Plaintiff fails to allege that gender stereotypes were a motivation for any SUNY official's conduct. Plaintiff alleges only the existence of gender stereotypes generally—not even among any SUNY officials in particular. She also fails to specify the nature of the alleged stereotypes. Critically, Plaintiff makes no allegation that any SUNY official made any comment demonstrating any gender stereotype. In *Naumovski*, where the plaintiff alleged a single comment demonstrating stereotyping, the court found that this "stray comment" was insufficient to raise an inference that stereotypes played any role in employment

decisions. Here, Plaintiff does not even allege so much as a single "stray comment" by any SUNY official.

Plaintiff's race discrimination complaint is further undermined by her allegation that one of the male coaches she lists is a "male of color." Compl. ¶¶ 84 n.7, 117. Even if it could be assumed that this "male of color" had received student complaints akin to those made against Plaintiff, had received more favorable treatment, and was otherwise similarly situated to Plaintiff in all respects (all assumptions that are unsupported by any factual allegations), this allegation disallows an inference of disparate treatment based on race. Plaintiff speculates that the non-renewal of her contract must have been based on stereotypes partially based on race (*i.e.*, alleged gender stereotypes that are exacerbated for women of color because of racial stereotypes), but she fails to explain how these stereotypes were operative with respect to her but not to the "male of color."

In addition, Plaintiff asserts that another female coach was the subject of student athlete complaints and a resulting investigation, but that coach was not terminated. Compl. ¶ 140. Here, too, Plaintiff fails to explain how, if gender stereotypes invariably influence the treatment of female coaches and necessarily determined the treatment of Plaintiff, this unidentified female coach was not subjected to these stereotypes.

Plaintiff alleges, in effect, that because gender and race stereotypes exist in the world, they must be the reason for the non-renewal of her contract. But Plaintiff alleges at the same time that of a "male of color" coach and a female coach were, for reasons left unexplained, not subject to stereotypes. These allegations make it impossible to infer, as Plaintiff asks the Court to do, that any employment decisions regarding Plaintiff are necessarily attributable to such stereotypes.

Indeed, rather than raise an inference of discrimination, Plaintiff's own allegations suggest that the treatment of which she complains was the result of the team's attrition rates and allegations by students and their family members that Plaintiff was abusive toward student athletes, including ignoring mental health concerns and physical injuries. *See* Compl. ¶¶ 94, 97-102, 127, 129.

Plaintiff fails to state a plausible claim of discrimination based on race or gender stereotypes. Plaintiff's Title VII claim and, to the extent it is recognized, her Title IX claim, must be dismissed.

C. **Plaintiff Fails to Raise an Inference of Race or Gender Discrimination Based on Her Allegation that The New Swim Coach is a White Female**

Plaintiff alleges that the current coach of the swim team is "a lesser qualified white female coach." Compl. ¶ 147. This allegation necessarily cannot support an inference that Plaintiff's gender played any role in the non-renewal of her coaching contract, because the new coach is alleged to be the same gender as Plaintiff. And

this conclusory allegation further fails to raise an inference that Plaintiff's coaching contract was not renewed because of her race.

It is true that some courts have ruled that a plaintiff may support an inference of discrimination by alleging that he or she was replaced with a less qualified person outside the plaintiff's protected class. *See Littlejohn*, 795 F.3d at 313. However, as these cases illustrate, a conclusory allegation such as that made by Plaintiff is not sufficient. In *Littlejohn*, the plaintiff was replaced as the Director of the defendant's Equal Employment Opportunity ("EEO") office, and she pleaded concrete facts supporting her allegation that her replacement was less qualified, including that the replacement employee had no EEO experience. *Id*. Without such factual allegations, a claim that a plaintiff was replaced by an employee outside his or her protected class can demonstrate only that her claim is conceivable, and not that it is plausible. This is insufficient. *Twombly*, 550 U.S. at 570 (holding that a claim cannot survive a motion to dismiss where a plaintiff has not "nudged [her] claims across the line from conceivable to plausible"); *see also Port Auth. of New York & New Jersey*, 768 F.3d at 254 (holding that a plaintiff must "at a minimum assert nonconclusory *factual matter* sufficient to nudge [her] claims across the line from conceivable to plausible" (emphasis added)).

Here, Plaintiff's claim that she was replaced by a "lesser qualified" coach does not plead any "factual matter." This allegation is merely Plaintiff's

unsupported subjective view.[2] On a motion to dismiss, only "well-pled" facts are assumed to be true. *Long Miao v. Fanhua, Inc.*, No. 18 Civ. 8183, 2020 WL 996602, at *1 n.2 (S.D.N.Y. Mar. 2, 2020). The Court is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011). Plaintiff's subjective allegation that the new coach is "lesser qualified" is not well-pled. It is a mere conclusory allegation of Plaintiff's subjective view unsupported by any facts. Accordingly, Plaintiff is not entitled to its assumed truth.

In addition, the current swim coach's qualifications, including the team's successes under her leadership, are publicly available on Stony Brook's website, and this public information further demonstrates the hollowness of Plaintiff's conclusory allegation. *See* bio of Kerry Smith, pdf annexed as Exhibit 1 to Declaration of Helena Lynch, *available at* https://stonybrookathletics.com/staff-directory/kerry-smith/447. The Court may take judicial notice of this information. *Doron Precision Sys., Inc. v. FAAC, Inc.*, 423 F. Supp. 2d 173, 179 n.8 (S.D.N.Y. 2006) ("For purposes of a 12(b)(6) motion to dismiss, a court may take judicial notice of information publicly announced on a party's website, as long as the website's

---

[2] *Littlejohn* cited cases in which the plaintiff provided less factual detail, but all of the cases it cited on this point predated *Twombly* and its requirement that a plaintiff plead concrete facts that render the claims plausible rather than merely conceivable. *See Littlejohn*, 795 F.3d at 313 (citing decisions dated 2000, 1996, and 1995, respectively).

authenticity is not in dispute and it is capable of accurate and ready determination." (internal quotation marks and citation omitted)).

Defendant submits this information regarding the qualifications of the new swim coach not to ask the Court to engage in an evaluation of which coach was more qualified, but rather to further illustrate that Plaintiff's allegation that she was replaced by a "lesser qualified" coach is not a factual allegation but is merely her unsupportable and subjective judgment. This allegation does not state a plausible claim that Plaintiff's contract was not renewed because of her race.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court grant its motion, dismiss all claims and requests for relief asserted in the Third Amended Complaint, in their entirety and with prejudice, and grant such other and further relief that the Court deems just and equitable.

Dated: Mineola, New York
      July 10, 2020

                        LETITIA JAMES
                        Attorney General of the State of New York
                        *Attorney for Defendant*
                        By: /s/ *Helena Lynch*
                        Helena Lynch
                        Assistant Attorney General, of Counsel
                        200 Old Country Road, Suite 240
                        Mineola, New York
                        (516) 248-3312
                        Helena.lynch@ag.ny.gov